UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-13515-RGS

JAMES ROACH

v.

JAMES GREEN, VINCENT STUART, and DELORES COOTS

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

March 29, 2016

This case arose from what began on April 30, 2013, as an unremarkable police response to a 911 call reporting a neighborhood disturbance. The evening ended with the arrest of plaintiff James Roach by defendants James Green, Sergeant Vincent Stuart, and Dolores Coots, who are current or former officers of the Framingham Police Department. Roach's *pro se* Complaint asserts violations of the Federal Civil Rights Act, 42 U.S.C § 1983, the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, § 11H, and the Massachusetts Tort Claims Act (MTCA), Mass. Gen. Laws ch. 258. Roach also presses a scattering of common-law claims. Before the court is defendants' motion for summary judgment.

BACKGROUND

The plausible facts, viewed in the light most favorable to Roach as the nonmoving party, are as follows.  On April 30, 2013, the Framingham Police Department received a 911 call at 9:37 p.m.  The anonymous caller reported that a black male resident of an apartment building at 12 Torrey Street was causing "real trouble" at a basement apartment.[1]  The caller stated that the man lived in the building with his mother, and that his girlfriend lived in the building as well.  Officer Coots was the first to arrive at the scene, followed a few minutes later by Sergeant Stuart and Officer Green.  When Coots arrived, Roach was standing alone outside the building.[2]

Coots asked Roach whether he had been fighting with a woman friend. Roach refused to answer and retreated towards the laundry room in the basement of the building.  The three officers followed Roach into the

---

[1] The caller stated that the man was "grabbing people," "throwing people around," and "putting hands on people."   Def.'s Statement of Undisputed Facts (SOF), Ex. B (recording of 911 call).

[2] Roach does not allege that any other person was with him outside the building when Coots arrived.  Nor does Coots.  Green, however, stated in his affidavit that Roach "was being argumentative with Coots as she tried to ask him who the female was he was arguing with when she pulled up to the side door." SOF, Ex. E at 1.  Green stated that he too asked Roach who the female was "so we could check on her well-being," and that Roach refused to answer "because the girl is white and he knows how Framingham cops are."  *Id.* Coots's affidavit omits any such account, and merely alleges that Coots asked Roach *whether* there had been a woman with him and whether he had fought with anyone, and that Roach refused to answer.

basement.   Roach swore at the officers and refused to answer their questions.[3]  A struggle ensued during which Sergeant Stuart tore his rotator cuff. Roach was eventually subdued and placed under arrest.  In subduing Roach, Sergeant Stuart used his Taser on Roach's leg.  After the arrest, Roach was transported to the MetroWest Medical Center emergency room for treatment.  Roach denied experiencing any lingering discomfort from the Taser charge.  Roach was charged with disorderly conduct and resisting arrest, and ultimately found not guilty.

Roach filed his Amended Verified Complaint (Complaint) *pro se* in the Suffolk County Court on June 10, 2014.  The Complaint alleges violations of Roach's First Amendment right to freedom of speech (Counts I and II), criminal assault and battery (Count III), filing a false police report (also Count III), use of excessive force in violation of the federal and state civil rights acts (Count IV), and use of excessive force and filing of "false criminal charges" in violation of the Massachusetts Tort Claims Act (Count V).  On

---

[3] According to Coots, Roach refused to produce any identification and was generally abusive towards her (an allegation corroborated by Officer Green and Sergeant Stuart).  Roach for his part states that he provided Coots with a prison-issued identification card from a previous incarceration and that she used his identification to check his criminal record and learned that he had no outstanding warrants.  Roach also claims to have responded to Cotts's questions.

August 28, 2014, defendants removed the case from state court to the federal district court on federal question grounds.

## DISCUSSION

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). However, "[s]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A number of Roach's claims can be summarily addressed. Roach raises no discernible First Amendment violation.[4] "The First Amendment does not protect violence," *NAACP v. Claiborne Hardware*, 458 U.S. 886, 916 (1982), threats, *Watts v. United States*, 394 U.S. 705, 707-708 (1969), speech

---

[4] The protections of art. 16 of the Massachusetts Declaration of Rights are coextensive with those of the First Amendment. *Hosford v. Sch. Comm. of Sandwich*, 421 Mass. 708, 712 n.5 (1996).

consisting of epithets and personal abuse, *Cantwell v. Connecticut*, 310 U.S. 296, 309-310 (1940), or "fighting words," *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572 (1942). Nor do assaultive behavior, threats, and "fighting words" come under the protection of the First Amendment simply because they are blended with elements of protected speech or expressive conduct. *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993). This is particularly true in the context of the public offense of disorderly conduct (a violation of state law, Mass. Gen. Laws. ch. 272, § 53). *See Commonwealth v. Richards*, 369 Mass. 443, 448-450 (1976) (defendants, who were drinking in public, verbally abused and fought with the officers who had ordered them to disperse); *Commonwealth v. Carson*, 10 Mass. App. Ct. 920, 921 (1980) (student's belligerent behavior was not excused by his verbal protestations of a police presence); *Commonwealth v. Sinai*, 47 Mass. App. Ct. 544, 548-549 (1999) (defendant's screaming and yelling, pounding on the steering wheel of his car, and resisting arrest, attracted a crowd and forced traffic to be rerouted). Roach claims only a general right to "engage and disengage" with police. No case extends this right to the verbal abuse of officers and resisting arrest. Consequently, summary judgment will enter for defendants on Counts I and II of Roach's Complaint.

Count III of Roach's Complaint alleges criminal violations of Mass. Gen. Laws ch. 265, § 37 (criminal violations of constitutional rights); Mass. Gen. Laws ch. 265, § 13A (assault and battery); Mass. Gen. Laws ch. 268, § 1 (perjury); and Mass. Gen. Laws ch. 268, § 6A (making of false written reports by public employees).  A private citizen has no standing to bring a cause of action under the criminal laws of the Commonwealth.  Only the District Attorneys and the Attorney General in their capacities as representatives of the Sovereign Commonwealth have that power.  *See Manning v. Mun. Ct. of the Roxbury Dist.,* 372 Mass. 315, 317-318 (1977).  Consequently, Count III of Roach's Complaint will be dismissed.

Count V of Roach's Complaint seeks damages under the MTCA, Mass. Gen. Laws, ch. 258.  Roach alleges the intentional torts of assault and battery and the filing of "false criminal charges" (which the defendants correctly interpret as claims of false arrest and malicious prosecution).  The MTCA "imposes liability on a public employer for a public employee's negligent act performed within the scope of his employment and relieves the public employee from liability." *Schenker v. Binns,* 18 Mass. App. Ct. 404, 404 (1984).  The MTCA in effect operates to abrogate the common-law doctrine of governmental immunity from tort actions.  Public employers are not, however, liable for claims arising directly out of an employee's *intentional*

torts. Mass. Gen. Laws ch. 258, § 10(c). *See MacLean v. Delinsky*, 407 Mass. 869, 878 n.6 (1990). Moreover, section 4 of Chapter 258 bars any suit for damages against a public entity unless the claimant within two years of the date on which the cause of action accrued presents notice in writing to the agency's chief executive officer. *See Gilmore v. Commonwealth*, 417 Mass. 718, 721-722 (1994). "Presentment is . . . a statutory condition precedent to recovery under [Mass. Gen. Laws ch.] 258." *Vasys v. Metro. Dist. Comm'n*, 387 Mass. 51, 55 (1982). Strict compliance is the rule, *Richardson v. Dailey*, 424 Mass. 258, 261-262 (1997), and performance must be pled in the complaint. *Rodriguez v. City of Somerville*, 472 Mass. 1008, 1010 n.3 (2015). As there is no evidence or pleading of a presentment, and because there is no liability attaching to a municipal employer for intentional torts under the MTCA, the false arrest and malicious prosecution claims brought under Count V must be dismissed.[5]

In a more substantial claim, Roach alleges that the defendants used excessive force in tackling him and subduing him with a Taser in effecting

---

[5] It is true that the MTCA does not act as a bar to private actions against public employees for intentional torts (as alleged here). *See Breault v. Chairman of Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 35 (1987). However, the MTCA itself "did not create any new theory of liability," *see Dinsky v. Framingham*, 386 Mass. 801, 804 (1982), and is not a proper vehicle under which a private tort action may be brought.

his arrest, in violation of his Fourth Amendment right to be free from

unreasonable search and seizure.[6]  "[C]laims that law enforcement officers

have used excessive force . . . in the course of arrest" require a fact-specific

inquiry into the objective reasonableness of the use of force.  *Graham*, 490

U.S. at 395-396; *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470

(2015).  The factors to be considered include the severity of the crime at issue,

whether a suspect poses a threat to the safety of the officers or others, and

whether the suspect is attempting to resist arrest or flee.  *Graham*, 490 U.S.

at 396.[7]

---

[6] Defendants argue that Roach's Complaint "fails to properly allege an excessive force claim as he has cited to the Fourteenth Amendment and not the Fourth Amendment."  Def.'s Mem. at 11.  While the defendants are correct that the Fourth Amendment supplies the proper standard for analyzing an excessive force claim pursuant to 42 U.S.C. § 1983, a plaintiff's citation to the incorrect amendment to the Constitution does not prevent a court from analyzing his claim under the correct standard.  *See Graham v. Connor*, 490 U.S. 386, 390, 398-399 (1989) (even where plaintiff alleged violation of "rights secured to him under the Fourteenth Amendment," reviewing court should apply Fourth Amendment standard to an excessive-force claim).

[7] The use of a Taser is an excessive response to mere insolence or defiance toward police officers, *Parker v. Gerrish*, 547 F.3d 1, 10 (1st Cir. 2008), and to non-threatening conduct, *Mattos v. Agarano*, 661 F.3d 433, 446, 451, 452 (9th Cir. 2011); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665-666 (10th Cir. 2010).  The Taser can be, however, an appropriate weapon (particularly when compared to a conventional firearm) when used to subdue belligerent or combative arrestees.  *See e.g., Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding officer's use of a Taser reasonable where defendant was "hostile, belligerent, and uncooperative" and "repeatedly refused to comply with [the officer's] verbal commands").

Here, there are legitimate disputes of fact about the degree of Roach's resistance to arrest, the level of his hostility and combativeness towards the officers, whether he presented an appreciable threat to the officers' safety or to others in the area, and whether the deployment of the Taser was appropriate under circumstances in which three officers confronted a single defendant.[8]   Viewing the facts in the light most favorable to Roach, a reasonable jury could find that the officers' use of force, including the Taser, to effect the arrest, violated Roach's rights under the Fourth Amendment.

---

Whether use of a Taser against a fleeing misdemeanant (as is the case here) is objectively reasonable is an open question. *See Henry v. Purnell*, 652 F.3d 524, 538 (4th Cir. 2011) (*en banc*) (Davis, J., concurring) (rejecting dissent's premise that "[a]n officer's use of a Taser is *always permissible under the Fourth Amendment* to effect the arrest of any fleeing suspect") (emphasis in original), and *Cockrell v. Cincinnati*, 468 Fed. App'x. 491, 498 (6th Cir. 2012) (Cole, J., concurring) (noting that while defendants were entitled to qualified immunity at the time, "given the totality of the circumstances, I believe that [the] use of force was excessive."). *Compare McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011) (use of a Taser, after warning, was reasonable to subdue a fleeing misdemeanor offender).

[8] It appears that the officers had reasonable cause to arrest Roach for disorderly conduct on the basis of the 911 call reporting in detail a domestic disturbance and Roach's uncooperative, and by their account belligerent, behavior at the scene. *See Commonwealth v. Mulero*, 38 Mass. App. Ct. 963, 965 (1995). First offense disorderly conduct, however, is a minor offense punishable only by a fine; a second or subsequent offense is punishable by a fine and sentence of not more than 6 months to a house of correction. Mass. Gen. Laws, ch. 272, § 53(b).  In any event, probable cause is not determinative of the issue of excessive force; nor, for that matter, is lack of probable cause. *Graham*, 490 U.S. at 396.

9

Roach also alleges a violation of his right to due process under the MCRA, Mass. Gen. Laws ch. 12, §§ 11H, 11I.  The Supreme Judicial Court has held the MCRA to be largely "coextensive with [section] 1983," although with the additional element that the violation of a plaintiff's rights be accomplished by "threats, intimidation, or coercion."  *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822-823 (1985).  Such threats, intimidation or coercion, however, must be distinct from the violation itself.

> Not every violation of law is a violation of the State Civil Rights Act.  A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act. . . . If the officials had some further purpose in treating [the plaintiff] as they did, threats, intimidation, or coercion might be involved.  Conduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly.

*Longval v. Comm'r of Correction*, 404 Mass. 325, 333-334 (1989).  Here, Roach has alleged no intimidation, threats or coercion beyond the alleged excessive use of force itself.[9]  Consequently, Count IV of the Complaint will be dismissed as to Roach's MCRA claims.

Finally, the defendants assert a defense of qualified immunity to Roach's claims.  "Qualified immunity gives government officials breathing

---

[9] That the officers were privileged to use "some degree of physical coercion or threat thereof" to effect Roach's arrest is beyond dispute. *Graham*, 490 U.S. at 396.

room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).  In analyzing a defense of qualified immunity, a court must determine whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and if so, whether that constitutional right was clearly established at the time of the violation.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Viewing the facts in the light most favorable to Roach, his constitutional right to be free from an unreasonable use of a Taser because of his failure to cooperate with the officers' investigation of a domestic disturbance complaint was established by the First Circuit's 2008 decision in *Parker*.  *See Parker*, 547 F.3d at 10 (finding that "a reasonable officer would not discharge his Taser simply because of insolence," or where the plaintiff was not actively resisting arrest); *cf. Kent v. Oakland Cnty.*, 810 F.3d 384, 397 (6th Cir. 2016) (use of Taser against plaintiff who "yelled at officers and refused to comply with commands . . . but was never told that he was

under arrest," and who did not present safety threat, violated a clearly established right). Because of the unresolved factual disputes regarding the officers' use of force, the claim of qualified immunity is denied without prejudice to its being reasserted at trial.[10]

## ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u> with respect to Counts I, II, III, and V, is <u>ALLOWED</u> with respect to Roach's MCRA claim in Count IV, and is <u>DENIED</u> with respect to Roach's section 1983 excessive force claim in Count IV. The claim of qualified immunity is reserved for a final determination at trial.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[10] A defendant's right to qualified immunity is a question of law for the court, once the facts have been established. *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004). However, if the court cannot determine the legal question without resolving a factual dispute, the court may submit special interrogatories to a jury while reserving the legal question for resolution at or after trial. *See St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 n.1 (1st Cir. 1995); *Prokey v. Watkins*, 942 F.2d 67, 73 (1st Cir. 1991).